463 So.2d 558 (1985)
BRANDENBURG INVESTMENT CORPORATION, Appellant,
v.
FARRELL REALTY, INC., Appellee.
No. 84-1187.
District Court of Appeal of Florida, Second District.
February 15, 1985.
*559 Michael M. Ingram of Crabtree, Sanchez, Parker & Ingram, P.A., Sarasota, for appellant.
Steven J. Chase and Terri Jayne Salt of Drymon, Bennett & Chase, P.A., Sarasota, for appellee.
FRANK, Judge.
The ultimate question in this matter is whether the evidence supports the final judgment. We begin with an examination of the record.
The appellant, Brandenburg, an Indiana corporation, communicated with the appellee, Farrell, for the purpose of purchasing a home in the Sarasota area. Prior to that communication, Farrell had procured an exclusive listing from the Cookseys for the sale of their home. After viewing the Cookseys' property, Brandenburg requested one of Farrell's agents to prepare and tender a purchase offer. The Brandenburg offer consisted of the payment of some cash, the assumption of Cookseys' mortgage and the exchange of property owned by Brandenburg. The Brandenburg proposal placed the equity value in Brandenburg's property at $10,000.00. At some point following Brandenburg's instructions to Farrell, the latter unilaterally altered the offer to increase the representation of Brandenburg's equity to $20,000.00. All other aspects of the Brandenburg offer remained unchanged. When Brandenburg learned that the proposal it wanted tendered to the Cookseys was at variance with its instructions, Brandenburg told Farrell it was deceptive to increase the equity in the Brandenburg property to $20,000.00.
Although the original Brandenburg offer was not submitted in writing to the Cookseys, the record does disclose that one of Farrell's agents, Bivens, orally informed the Cookseys of the content of the Brandenburg offer. The Cookseys informed Bivens that they had no interest in an offer involving an exchange of property.
It is apparent from the record that an element in the conflict which developed between Brandenburg and Farrell originated in Farrell's insistence that Brandenburg pay a commission geared to the value of the property Brandenburg would transfer to the Cookseys if the exchange of property were a part of the ultimate transaction. Brandenburg balked at that condition. Farrell did state to Brandenburg, however, that he would submit any offer to the Cookseys which Brandenburg desired. At this juncture, it appears that Brandenburg ceased using Farrell's intermediary role as a broker.
Approximately one month after the last communication between Brandenburg and Farrell, the Cookseys and Brandenburg agreed upon a contract for purchase, without the exchange of property. Upon learning of the sale, Farrell demanded a commission from the Cookseys. The Cookseys' attorney responded by asserting that a commission would not be paid because Farrell had failed to inform the Cookseys of Brandenburg's initial, unaltered offer. It is significant that although Farrell spoke with Brandenburg at a time subsequent to Brandenburg's direct dealings with the Cookseys, Brandenburg did not reveal that activity to Farrell.
At first blush it appears that Farrell's cause of action would lie only against the Cookseys for breach of the exclusive listing agreement if it can be said that Farrell was the "procuring cause" of the sale to Brandenburg. Ehringer v. Brookfield And Associates, Inc., 415 So.2d 774, 775-76 (Fla. 5th DCA 1982). A broker becomes the procuring cause "by doing some affirmative act to bring buyer and seller together such as ... showing the property to prospective purchasers." Id. Based upon the record before us, there can be no meritorious claim that Farrell was not the "procuring cause" in bringing Brandenburg and the Cookseys together.
*560 At the outset of the litigation Farrell sued the Cookseys for breach of the listing agreement. Service was effected only upon Mrs. Cooksey and a default judgment was entered against her in the amount of $16,501.75. Thereafter, the complaint was amended to add Brandenburg and to allege that Brandenburg induced the Cookseys to breach the listing agreement, that such conduct was intentional and maliciously interfered with Farrell's right to a commission deriving from the contract with the Cookseys.
We now reach the central question of law resolved by the trial court against Brandenburg. In Mead Corporation v. Mason, 191 So.2d 592 (Fla. 3d DCA 1966), the Third District traced the development in this State of the doctrine permitting a broker to pursue a purchaser whose conduct results in the broker's loss of commission. That history discloses that at an earlier time our Supreme Court confined the broker's rights to "all that he could have  a claim for compensation against the party with whom he contracted  to wit: the vending owner." Nicol v. Bressler, 159 Fla. 668, 32 So.2d 457 (1947). An attitude of retreat from circumscribing the broker's cause of action to the seller was expressed some seven years later in Schneider v. Binder, 72 So.2d 909 (Fla. 1954). Thus, today, if the broker is able factually to establish that the "purchaser intentionally and without justification interfered with ..." the relationship between the seller and the broker "and, if the seller acted in concert with the purchaser they are jointly and severally liable." Mead, 191 So.2d at 595; see, e.g., Fearick v. Smugglers Cove, 379 So.2d 400, 403 (Fla. 2d DCA 1980); Sutton v. Stewart, 358 So.2d 119 (Fla. 1st DCA 1978); Oro Verde Groves, Inc. v. Fuchs, 136 So.2d 12 (Fla. 3d DCA 1962); Pokress v. Southern Hotel Corp., 42 So.2d 166 (Fla. 1949).
The trial court's determinations, both factual and legal, come to us endowed with a presumption of correctness, and "it is not the prerogative of an appellate court, upon a de novo consideration of the record, to substitute its judgment for that of the trial court." Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976). And when, upon review, the trial court's findings of fact are supported by the record, they remain undisturbed and conclusive. Spencer v. American Advisory Corp., 338 So.2d 62 (Fla. 3d DCA 1976). Indeed, "when there is competent evidence to support the findings and judgments of the trial court it is the duty of this court to affirm." Continental Development Corporation of Florida v. Duval Title and Abstract Company, 356 So.2d 925, 927 (Fla. 2d DCA 1978). We fulfill that duty and affirm.
The contention that Farrell's modification of Brandenburg's proposal justified direct dealing between the Cookseys and Brandenburg rings as hollow here as it must have before the trial court. Brandenburg's reliance upon the alteration of its initial offer emerges from this record as a pretext designed as a means, either at trial to escape liability or, at an earlier time, during the Brandenburg-Cooksey negotiations, to reach a bilaterally favorable arrangement for purchase of the property free from Farrell's commission. The trial court was wholly warranted in rejecting the alteration of Brandenburg's offer as a valid basis for the direct dealing with the Cookseys. That the Cookseys would not accept an exchange of property buttresses the conclusion that the altered offer could not have been the motivating factor underlying Brandenburg's circumvention of Farrell. The elimination of Farrell's commission resulted in a compromise purchase price of $153,000, an amount below Cooksey's asking figure of $180,000 but above Brandenburg's initial offer, which included the exchange of property, of $150,000.00. Thus, by ignoring Farrell, Brandenburg achieved the purchase for only $3,000.00 more than its net initial offer, it retained the equity in the exchange property, and the Cookseys enhanced their yield by some $10,000.00.
Finally, in spite of Farrell's willingness to transmit any offer from Brandenburg to the Cookseys, Brandenburg never sought *561 to follow that course. That fact, coupled with Brandenburg's non-disclosure of the direct negotiations with Cooksey during a conversation with Farrell, which occurred after Brandenburg and the Cookseys had entered upon their private dealings, more than suggests that Brandenburg and the Cookseys "joined in a plan to deprive... ." Farrell of his benefit under the listing agreement. Mead, 191 So.2d at 595. We conclude that sufficient evidence undergirds the trial court's judgment that Brandenburg, without justification, intentionally interfered with Farrell's entitlement to a commission for which Brandenburg is answerable.
Affirmed.
RYDER, C.J., and LEHAN, J., concur.